UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARGO MATTICE | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:10-CV-2009(JCH) |
| | : | |
| v. | : | |
| | : | |
| CONVEO CORP. | : | JANUARY 3, 2012 |
|    Defendant. | : | |
| | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SANCTIONS (DOC. NO. 30)**

**I.   INTRODUCTION**

Plaintiff, Margo Mattice, brings this action against Conveo Corp. (hereafter "Conveo"), asserting that she was subjected to adverse terms and conditions of employment, including termination, as a result of her sex and age, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-40 et seq.  Conveo filed this Motion, seeking to dismiss Mattice's Complaint with prejudice, on the basis of Conveo's assertions that Mattice perjured herself at her deposition and has engaged in obstructive discovery tactics.  Alternatively, Conveo seeks sanctions, including costs and fees.

For the reasons set forth below, the Motion is denied.

**II.   DISCUSSION**

Perjury is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."

1

See Radecki v. GlaxoSmithKline, 646 F. Supp. 2d 310, 315 (D.Conn. 2009) (quoting United States v. Dunnigan, 507 U.S. 87, 94 (1993)).  It is inherent in the power of the court to punish contempt, including perjury.  See Chambers v. Nasco, Inc., 501 U.S. 42, 44 (1991).  Due to the potency of this power, courts must exercise it with restraint and discretion.  See id. at 44.  In exercising that discretion, it is up to the court to "fashion an appropriate remedy for conduct which abuses the judicial process," up to and including dismissal of the claim.  See id. at 44–45.  Generally, in determining whether a party has perjured himself or herself, courts apply a clear and convincing evidentiary standard.  See, e.g., Radecki, 646 F. Supp. 2d at 314 (D.Conn. 2009) ("[T]he court concludes, on the basis of clear and convincing evidence, that [the plaintiff] committed perjury and that a sanction is appropriate."); Knapp v. Convergys Corp., 209 F.R.D. 439, 442 (E.D.Mo. 2002) (noting that the record "contains clear and convincing evidence" that plaintiff lied regarding her employment in her affidavit).

     Conveo contends that dismissal is appropriate here because Mattice testified "falsely and unequivocally" during her deposition regarding certain aspects of her tenure at Byram Healthcare Centers, Inc. (hereafter "Byram"), her place of employment following her termination from Conveo.  See Mem. Supp. Mot. at 2.  In addition, Conveo asserts that Mattice acted to obstruct discovery in filing a Motion to Quash Conveo's subpoena to Byram.  See id. at 15.

     Conveo points to several instances during Mattice's deposition where it contends she committed perjury.  The court will address each in turn.

### A. Written Memorandum

First, Conveo states that, in response to the question of whether she received any "written memorandum about [her] performance other than [her] performance evaluation," Mattice testified that she had not, when in fact, she had received and executed a Notice of Corrective Action Performance Improvement Plan approximately a year earlier, while she was working at Byram. See Mem. Supp. Mot. at 9–10; Exs. A, D. In response, Mattice contends that she was confused by the question, and did not understand "written memorandum" to refer to the Notice of Corrective Performance Action form. See Mattice Aff. at ¶¶ 6–7.

The court does not find this testimony to be unequivocally false, as Conveo contends. Reasonable people could differ in their understanding of the term "written memorandum," and, given that Mattice asked for clarification prior to answering the question, it is quite possible that she was confused by the question. Consequently, Conveo fails to offer clear and convincing evidence of perjury.

### B. Discussion of Tardiness

Next, Conveo asserts that Mattice committed perjury during her deposition, and continues to commit perjury in her affidavit, in asserting that her supervisor at Byram, Thie Brouwer, only spoke with her once about her tardiness. See Mem. Supp. Mot. at 10–11; Reply Mem. at 4. Inconsistency between a party's deposition testimony and documents obtained in discovery is hardly evidence of perjury. Instead, it is evidence of a factual issue, to be resolved by a jury at trial. While Conveo may use documents referencing additional conversations regarding Mattice's punctuality to impeach her testimony at trial, it may not simply assert that the existence of such references

conclusively proves that Mattice is willfully testifying falsely.  Contradictory evidence does not constitute clear and convincing evidence of perjury.

### C. Criticisms of Performance

Conveo next asserts that Mattice perjured herself in answering "No" when asked whether anyone at Byram had spoken with her about "whether or not [she] was difficult to work with."  See Mem. Supp. Mot. at 11.  In support of this assertion, Conveo points to a document from Mattice's personnel file, written by Brouwer, which states that Mattice was told she was "alienating people within the organization."  See Ex. E.  In response, Mattice first asserts that she was never provided a copy of this document until September 2011, and consequently, had not seen it prior to her deposition in July 2011.  See Mem. Opp. Mot. at 14.  Additionally, Mattice asserts that she understood Brouwer's comment to her about "alienating co-workers" to "be an acknowledgment that some co-workers were displeased with [her] because [she enforced] stricter expense reimbursement policies than they were used to."  See Mattice Aff. at ¶ 15.

The assertion that Mattice alienated co-workers is not necessarily equivalent to the assertion that she was difficult to work with.  While Conveo may interpret the document to mean that Mattice was difficult to work with because she had alienated her co-workers, it is not necessarily the case that Mattice understood Brouwer's statement in that way, and it is the province of the jury to determine whether Conveo is correct.[1]  This discrepancy is not clear and convincing evidence of perjury.

---

[1] Further, the court wonders why it is necessarily the case that Brouwer's version of what he claims he said is accurate?

4

D.      Performance Review

Next, Conveo asserts that Mattice perjured herself in testifying that she received "a fairly good review" at Byram.  See Mem. Supp. Mot. at 11–12.  Conveo supports its assertion by noting that, on a scale of one to three, with one meaning "does not meet this expectation" and three meaning "exceeds expectations," Mattice's review indicates "1/2" in five categories.[2]  See Mem. Supp. Mot., Ex. I.  As Mattice points out, however, in the other twenty-two categories, she was rated as fully meeting or exceeding expectations.  See id.  In addition, the review includes several complimentary comments regarding Mattice's strengths.  See id.  Mattice's testimony regarding her review, especially when qualified as a "<u>fairly</u> good review," (emphasis added) does not even appear to be false testimony, let alone clear and convincing evidence of perjury.

E.      Tardiness

Conveo asserts that Mattice perjured herself by testifying that, when she arrived late to work, she arrived between 9:00 and 9:30 a.m., when Byram documents indicate that she "'typically' arrived at work between 9:30 a.m. and 10:30 a.m., and as late as 2:00 p.m."  See Mem. Supp. Mot. at 12.  As discussed above, a discrepancy between Mattice's testimony and subsequently discovered documents does not indicate clear and convincing evidence of perjury.  It is for the jury to determine the credibility of Mattice's testimony as compared to the documents Conveo obtained from Byram.[3]

---

[2] Conveo seems to argue that this score is meant to indicate one-half, while Mattice argues the score is meant to indicate "1 to 2."  Conveo acknowledges in its Reply that "this may be a factual issue."  See Def.'s Reply at 4, n. 4.

[3] See also supra note 1.

F.   Confidential Stock Award Information

Finally, Conveo argues that Mattice intentionally gave false testimony in stating that, while at Conveo, she used confidential stock award information to prepare certain spreadsheets.  See Mem. Supp. Mot., Ex. A at 292–93.  In support of this assertion, Conveo baldly states that it "has confirmed that Plaintiff did not obtain or use such information to prepare the Spreadsheets, as they do not contain or incorporate any such information."  See Mem. Supp. Mot. at 13.  Again, this discrepancy is the type of dispute meant to be resolved by a jury at trial; it is not clear and convincing evidence of perjury.

G.   Motion to Quash

Lastly, Conveo asserts that sanctions are appropriate because Mattice acted to obstruct discovery by filing a Motion to Quash Conveo's subpoena of Byram's documents.  See Mem. Supp. Mot. at 15–16.  In response, Mattice contends that, at the time the Motion to Quash was made, neither Mattice nor her lawyer had seen the Byram documents, and were not aware of their contents.[4]  See Mem. Opp. Mot. at 17.  Furthermore, Mattice attaches a letter from her counsel to Conveo, proposing that Byram produce the documents to Mattice for review, and Mattice produce the relevant documents to Conveo.  See Mem. Opp. Mot., Ex. 2, Att. A.  In addition, Mattice's counsel proposed in camara review for any withheld documents.  See id.  Mattice notes that Conveo did not respond to this proposal, but instead filed an opposition to Mattice's

---

[4] While Mattice may have been aware of certain documents that were likely to be in her personnel file at Byram, see, e.g., Mem. Supp. Mot. Ex. D (containing Mattice's signature), Mattice contends that she did not review her file while she was an employee at Byram, and that New York law does not require that an employer notify the employee when a document is placed in her file.  See Mattice Aff. at ¶ 11.

6

Motion to Quash.  See McKenna Aff. at ¶ 14.  Under these circumstances, the court determines that sanctions are not appropriate.[5]

Further, it bears noting that the defendant itself was less than forthright in receiving documents from Byram outside the context of a deposition and failing to providing opposing counsel a copy of such documents immediately.  See, e.g. Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 386–87 (7th Cir. 2008) (affirming the imposition of sanctions where plaintiff's counsel failed to provide opposing counsel with copies of third-party subpoenas, and did not provide opposing counsel with copies of the documents received for one month).

H.     Motion for Leave to File

Conveo initially filed this Motion on October 7, 2011, and the Motion was joined as of November 11, 2011.  On December 21, 2011, Conveo filed a Motion for Leave to File Supplement to the Record, seeking leave to file an additional five page memorandum and to provide the court with written and videotaped portions of the transcript from Brouwer's deposition, which was conducted on December 2, 2011.  See Mot. to Supplement at 1.

The court considered Conveo's Motion for Leave to Supplement and offer of proof in reaching this decision.  As discussed above, the court is not in a position to assess a witness's credibility at this stage of the litigation.  Conveo's assertion that this additional information is necessary in order for the court to "more fully assess the credibility of plaintiff's sworn statements in her deposition and affidavit" demonstrates

---

[5] In addition, this court has already denied Mattice's Motion to Quash, as well as her Motion for Protective Order.  See Doc. No. 22.

the unreasonableness of this Motion to Dismiss overall, as it is the province of the jury to assess credibility, not of the court.[6]  Conveo's Motion for Leave is denied.

## V. CONCLUSION

The court is puzzled by this Motion.  Conveo appears to be of the view that because a person or document says something contrary to Mattice's testimony, Mattice is necessarily lying.  As the court routinely instructs juries, failures of recollection or faulty recollection do not necessarily call into question a witness's veracity.

The points Conveo raises are the province of the jury.  It may be the case that Conveo will successfully impeach Mattice regarding her testimony at trial.  On the other hand, the jury may well accept the plaintiff's recollection and reject defendant's characterization of the documents, or question the veracity of the document's author.  Regardless, it is the jury's role to form those judgments, not the court's.

For the foregoing reasons, Conveo's Motion to Dismiss, or in the alternative, Motion for Sanctions is **denied** (Doc. No. 30).  Further, Conveo's Motion for Leave to Supplement the Record (Doc. No. 50) is **denied**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 3rd day of January, 2012.

                                           /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge

---

[6] Additionally, the court again questions Conveo's assertion that simply because Brouwer's testimony supports Conveo's view of the facts, that necessarily means that Mattice willfully testified falsely.